UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK COLLINS, INC.,

Plaintiff,                                    Case No. 4:12-cv-13309 MAG MKM
                                              Hon. Mark A. Goldsmith
                                              Hon. Mona K. Majzoub
v.

JOHN DOES 1-33,

Defendants.

_____/

Paul J. Nicoletti, Esq. (P44419)        Elizabeth A. Downey (P37036)
36880 Woodward Ave, Suite 100           Elizabeth A. Downey, P.C.
Bloomfield Hills, MI 48304              30300 Northwestern Hwy., Ste. 200
Tel: (248) 203-7800                     Farmington Hills, MI 48334
Fax: (248) 203-7801                     (248) 539-7407
E-Fax: (248) 928-7051                   attylizdowney@aol.com
Email: paul@nicoletti-associates.com    Attorney for John Doe #28
Attorneys for Plaintiff

**JOHN DOE #28'S
MOTION TO QUASH OR MODIFY SUBPOENA TO WIDE OPEN WEST
AND TO SEVER THE CASE**

John Doe #28, pursuant to Fed.R.Civ.P. 45(c), moves to quash the subpoena
served on WOW Internet, Cable & Phone ("WOW") or to modify it to refrain from
disclosing John Doe #28's phone number and to allow the case to proceed against him
anonymously.[1]  In the alternative, John Doe #28 moves, pursuant to Fed.R.Civ.P. 21, to
sever the case from that against other defendants.  In support of these motions, John Doe
#28 states:

1.      John Doe #28's internet service provider is WOW.  John Doe #28 owns a

wireless router with an IP address that is subject to change at the discretion of WOW.

_____

[1] As "John Doe #28"'s identity has yet to be revealed, Counsel will use masculine pronouns to refer to John
Doe "28, in accordance with the name "John."  This does not imply anything about John Doe #28's
identity.

2.      Recently, John Doe #28 received a letter from WOW, attached as Exhibit 1, advising of the subpoena requiring it to disclose the name, address, and telephone number of the subscriber whose router carried that IP address on May 15, 2012 and that WOW believes that John Doe #28 is that person.  WOW also advised that the return date of the subpoena is, by agreement with Plaintiff's Counsel, October 12, 2012.

3.      John Doe #28 consulted counsel to determine what this matter was about. John Doe #28 believed, from the caption of the subpoena (attached as Exhibit 2) that this was a matter arising in the Northern District of Illinois, rather than the Eastern District of Michigan.  John Doe #28's counsel had to spend time (billable to John Doe #28) to determine that the matter was not in the Northern District of Illinois, but the Eastern District of Michigan, and that the correct case file was not "2:12-cv-13309-MAG-MKM" but "**4:**12-cv-13309-MAG-MKM."  These were careless errors that cost John Doe #28 unnecessary attorney fees.  John Doe #28 objects to the subpoena as violative of Fed.R.Civ.P. 45(a)(1)(A) and respectfully requests that it be quashed, or, in the alternative, that he be awarded $500 costs and attorney fees for having to pay for an attorney to track down the case.

4.      John Doe #28 has learned that this case is part of a nationwide litigation scheme in which pornographers seek excessive profits at the expense of innocent owners of IP addresses.  The pattern is that a pornographer puts into the stream of internet commerce a pornographic movie, allows or encourages downloads through programs such as BitTorrent, and alleges that it has a forensic program that identifies computers that have downloaded the film in violation of copyright (in fact, however, all that the pornographer knows is an IP address used by the computer that allegedly download the

film in violation of copyright).  The next step is to file numerous "John Doe" suits seeking $150,000 or more against each John Doe IP address-holder for copyright violations.  The next step is to seek Rule 45 subpoenas in the absence of named defendants to expose the owners of the IP addresses; if the Court grants the subpoenas, the pornographer or its agents contact the owners to demand "settlement" money to avoid naming them publicly as consumers of pornography obtained in violation of copyright. Typically, the "settlement" demand is for $2,000 - $3,000, which is usually less than the cost of defense – but far more than the pornographer could earn for legal sale of a film to a consumer.  Meanwhile, the pornographer has no proof that the owner of the IP address ever actually downloaded the pornographic film, and it knows that in many cases it will never be able to provide any such proof.  But by means of this scheme, the pornographer turns the federal courts into a profit center for its industry by willfully filing cases it cannot win.

5.      John Doe #28 objects to WOW providing his name, address, and telephone number to Plaintiff pursuant to subpoena because it would impose on John Doe #28 an undue burden, in violation of Fed.R.Civ.P. 45(c)(3)(iv).  John Doe #28 will likely be exposed to harassing and embarrassing demands for money, or will be threatened with a public accusation of illegally downloading pornography.  Such a false accusation may negatively impact John Doe #28's pending employment application as an IT specialist with a major U.S. corporation.  Meanwhile, John Doe #28 will incur attorney fees and costs in preparing to defend a frivolous case.

6.      In the alternative, John Doe #28 moves for severance from this case under Fed.R.Civ.P. 21 as having been improperly joined.   The complaint alleges only that

someone using John Doe #28's IP address had a piece of Plaintiff's movie on May 15, 2012 at 10:11 p.m.   That information does <u>not </u>demonstrate that:

    a.    John Doe #28's IP address was being used by John Doe #28 at the time;

    b.    John Doe #28's IP address was not used by someone within range of John Doe #28's wireless router without John Doe #28's knowledge or consent;

    c.    John Doe #28's IP address was not hacked into by persons unknown to John Doe #28.

Based on the complaint, there is no evidence suggesting that John Doe #28 actually or willfully communicated with any other Defendant John Doe (rather than thousands of other participants in any "swarm" that allegedly downloaded the other pieces of the pornographic film)  to download pieces of the  film or to assist others in downloading it. Indeed, the complaint appears to allege that no other Defendant John Doe was sharing information on May 15, 2012 (the alleged date of John Doe #28's participation in the "swarm").  Thus, there is no common transaction or occurrence or series of transactions or occurrences.

    7.    In the further alternative, John Doe #28 moves, in accordance with Fed.R.Civ.P. 45(c)(3)(A)(iv) for an order modifying the subpoena to keep the telephone numbers private, and to maintain this case as a "John Doe" case.

    8.    Counsel attempted to contact Plaintiff's Counsel by email on Friday, October 5, 2012 but did not receive an answer.  On Tuesday, October 9, 2012, Counsel attempted to ascertain whether this motion would be contested; Counsel for Plaintiff advised that his client would call directly.  On Tuesday October 9, 2012 at approximately

2:50 p.m., Counsel spoke with a representative of Plaintiff, who concurred that unless John Doe #28 were willing to settle immediately, he should file the motion to quash.

For these reasons, as more fully set forth in the attached brief, John Doe #28 respectfully requests that

a)        the subpoena be quashed as defective or, in the alternative

b)        the subpoena be quashed as to John Does #2-33 and Plaintiff be required to refile against individual John Does or, in the alternative,

c)        that the subpoena be modified to delete the requirement of disclosing telephone numbers of the John Does and to strictly limit contact with the John Does other than for service of process, as was done in *Patrick Collins, Inc. v. John Does 1-13,* Case # 1:12-cv-00844-TWP-MJD document #19.

Respectfully Submitted,

/s/ Elizabeth A. Downey_____
Elizabeth A. Downey (P37036)
Elizabeth A. Downey, P.C.
30300 Northwestern Hwy., Ste. 200
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com
Attorney for John Doe #28

October 9, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK COLLINS, INC.,

Plaintiff,                                  Case No. 4:12-cv-13309 MAG MKM
                                            Hon. Mark A. Goldsmith
                                            Hon. Mona K. Majzoub
v.

JOHN DOES 1-33,

Defendants.
_____/
_____

| Paul J. Nicoletti, Esq. (P44419) | Elizabeth A. Downey (P37036) |
| 36880 Woodward Ave, Suite 100 | Elizabeth A. Downey, P.C. |
| Bloomfield Hills, MI 48304 | 30300 Northwestern Hwy., Ste. 200 |
| Tel: (248) 203-7800 | Farmington Hills, MI 48334 |
| Fax: (248) 203-7801 | (248) 539-7407 |
| E-Fax: (248) 928-7051 | attylizdowney@aol.com |
| Email: paul@nicoletti-associates.com | Attorney for John Doe #28 |
| Attorneys for Plaintiff | |

**BRIEF OF DEFENDANT JOHN DOE #28 IN SUPPORT OF
MOTION TO QUASH OR MODIFY SUBPOENA TO WIDE OPEN WEST
AND TO SEVER THE CASE**

## I.      TABLE OF CONTENTS

II.      Questions Presented ……………………………………………       ii

III.     Index of Authorities …………………………………………..       iii

IV.     Statement of Facts …………………………………………       1

    A.      The Patrick Collins Copyright Scheme ………………………       1

    B.      John Doe #28 and the Allegations ……………………………       4

V.      Argument ……………………………………………………       5

    A.      The Subpoena is Defective ………………………………..       5

    B.      The Subpoena Should be Quashed for Improper Joinder ……       5

.      C.      In the Alternative, the Court Should Provide for Reasonable Safeguards ……………………………………………       11

VI.     Conclusion and Prayer for Relief ……………………………       12

## II.    QUESTIONS PRESENTED

A.    Should the WOW subpoena be for violation of Fed.R.Civ.P. 45(a)(1)?

John Doe #28 says "yes."
Plaintiff says "no."


B.    Should the WOW subpoena be quashed as to John Does #2-33 for improper joinder?

John Doe #28 says "yes."
Plaintiff says "no."


C.    Should the Court institute controls that preserve Plaintiff's litigation rights, but prevent abuse of the court system as an extortion scheme?

John Doe #28 says "yes."
Plaintiff says "no."

### III. INDEX OF AUTHORITIES

**Page**

**Federal Cases**

*Digital Sin, Inc. v. Does 10176,* 279 F.R.D. 229 (S.D.N.Y. 2012) ...............    6

*Donkeyball Movie, LLC v Does 1-171,* 810 F.Supp.2d 20 (D.D.C. 2011) ......    6

*First Time Videos, LLC v. Does 1-76,* 275 F.R.D. 254 (N.D.Ill. 2011) ..........    6

*Hard Drive Prod. v. Does 1-88,* 809 F. Supp.2d 1150 (N.D. Cal. 2011) ........    6

*Mick Haig Productions E.K. v. Does 1-670,* 687 F.3d 649 (5th Cir. 2012)......    3

*Patrick Collins v. John Does* 1-21, 282 F.R.D. 161 (E.D.Mich. 2012) .........    7

*Patrick Collins, Inc. v. John Does 1-10,* No. 2:12-cv-01452-JAM-CKD,
      Doc. 5 (E.D.Ca. July 13, 2012)(attached as Exhibit 5) .....................    2

*Patrick Collins v. John Does* 1-23, 2012 U.S. Dist. LEXIS 40536
      (E.D. Mich. March 26, 2012)(attached as Exhibit 7) ....................    7

*Patrick Collins, Inc. v. John Does 1-13,* N.D. Ind.Case #
      1:12-cv-00844-TWP-MJD, Document #19 (attached as Exhibit 9) .....    11

*Patrick Collins, Inc. v. John Does 1-6,* 2012 U.S.Dist.LEXIS 77486
      (S.D.N.Y. June 1, 2012)(attached as Exhibit 6) ..........................    3

*Patrick Collins, Inc. v. John Does 1-15,* W.D. Mich. #1:12-cv-00618, Doc. 9
      (Opinion and Order of August 13, 2012)(attached as Exhibit 8)........    8

**Federal Statutes**

17 U.S.C. §505 …………………………………………………………..    10

**State Statutes**

M.C.L. 600.2591 ………………………………………………………….    10

**Court Rules**

Fed.R.Civ.P. 1 ………………………………………………………………    8

Fed.R.Civ.P. 11 ………………………………………………………….    10

Fed.R.Civ.P. 20 ………………………………………………………….   6

Fed.R.Civ.P. 21 ………………………………………………………….   6

Fed.R.Civ.P.45 ………………………………………………………….   5, 6, 8

Fed.R.Civ.P. 45(1)(A)(i) ………………………………………………..   5

Fed.R.Civ.P. 45(1)(A)(ii) …………………………………………………   5

Fed.R.Civ.P. 45(c)(3)(A)(iv) ………………………………………………   11

Fed.R.Civ.P. 54(d)(1)………………………………………………………   9

# IV.    STATEMENT OF FACTS

## A.    The Patrick Collins Copyright Scheme

Any internet search for information on film producers and distributors (whether pornographic or G-rated) usually turns up information on the company and/or the films; indeed, as most legitimate producers or distributors want to sell the product, sales information is uplinked.

But any internet search for "Patrick Collins, Inc." or "Patrick Collins, Inc. films" yields page upon page of litigation against thousands of "John Does" across the country who are accused of illegally downloading pornographic films produced by Patrick Collins, Inc.   It is actually difficult to find any websites devoted to legitimate marketing of the films.   Within the past three years, Patrick Collins, Inc. has filed hundreds of cases against thousands of internet users, as shown by the list attached as Exhibit 3.   Ten have been filed in this district alone:

| Court | No. | Defendants | Date Filed | Date Closed | Resolved on Merits? |
|-------|-----|-----------|-----------|------------|--------------------|
| **E.D. Mich.** | 1:12-cv-13670 TLL CEB | John Does 1-28 | 8/19/12 | | |
| | 2:11-cv-15231 GCS RSW | John Doe | 11/29/11 | 4/2/11 | No |
| | 2:11-cv-15232 DPH MAR | John Does 1-21 | 11/29/11 | | |
| | 2:12-cv-15236 PDB PJK | John Does 1-30 | 11/29/11 | 6/27/12 | No |
| | 2:12-cv-12596 AJT RSW | John Does 1-21 | 6/14/12 | | |
| | 2:12-cv-13310 AJT MJH | John Does 1-12 | 7/26/12 | | |
| | 2:12-cv-13948 LPZ MJH | Vanvalkenberg | 9/6/12 | | |
| | 4:11-cv-15237 MAG MAR | John Does 1-27 | 11/29/11 | 6/27/12 | No |
| | 4:12-cv-13309MAG MKM | John Does 1-33 | 7/26/12 | | |
| | 4:12-cv-13888 MAG MAR | Maisonville | 9/1/12 | | |

While there are literally hundreds of such suits, Counsel' research has failed to uncover a **single case** that actually progressed to a point where the court addressed the merits of the allegations (with the exception of two defaults in the District of Maryland and one in the

Eastern District of North Carolina).   A review of these cases -- and the newspaper and first-person accounts attached as Exhibit 4 -- demonstrates exactly what this flood of litigation is all about: money for nothing.  Magistrate Judge Delaney, in *Patrick Collins, Inc. v. John Does 1-10*,  Case No. 2:12-cv-01452-JAM-CKD, Doc. 5 (E.D.Ca. July 13, 2012)(attached as Exhibit 5) at *2-3, n. 2 described the scheme succinctly:

> A number of similar cases have been filed in the past several months, many of which appear to be simply using the federal courts as an avenue to collect money. As one judge aptly observed:

>> The Court is familiar with lawsuits like this one. [Citations omitted.] These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits. The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement—making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it.

> *Malibu Media, LLC v. John Does 1 through 10,No. 2:12-cv-3623-ODW(PJWx), 2012 U.S. Dist. LEXIS 89286 at *8-9 (C.D. Cal. June 27, 2012)*; see also *Malibu Media, LLC v. Does 1-5, No. 12 Civ. 2950(JPO), 2012 U.S. Dist. LEXIS 76624, 2012 WL 2001968 at *1 (S.D.N.Y. June 1, 2012)*(court "shares the growing concern about unscrupulous tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded.").

*See also Mick Haig Productions E.K. v. Does 1-670,* 687 F.3d 649, 652, esp. n.2 (5th Cir. 2012).

This scheme, of course, requires at least the veneer of a copyright infringement action.  But Patrick Collins, Inc. knows that its allegations founder on this fact: <u>assuming</u> that the forensic software it uses is accurate, the software does not identify the infringers. Rather, it can only identify the IP addresses the alleged infringers used.  As  District Judge Paul J. Oetken noted in *Patrick Collins, Inc. v. John Does 1-6,* 2012 U.S.Dist.LEXIS 77486 (S.D.N.Y. June 1, 2012)(attached as Exhibit 6) at *2-5 :

> The fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer. *See e.g., In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S. Dist. LEXIS 61447, 2012 WL 1570765, at *3* ("[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time."). Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering internet connection. There is real risk that defendants might be falsely identified and forced to defend themselves against unwarranted allegations. In such cases, there is a risk not only of public embarrassment for the misidentified subscriber, but also that the innocent subscriber may be coerced into an unjust settlement with the plaintiff to prevent the public filing of unfounded allegations. The risk of a shake-down is compounded when the claims involve allegations that a defendant downloaded and distributed sexually explicit material. *See, e.g., Digital Sin, Inc. v. Does 1-176,2012 U.S. Dist. LEXIS 10803, 2012 WL 263491, at *3* (finding that approximately 30% of individuals identified by ISPs in cases against John Doe defendants concerning alleged infringement of adult films are not the individuals who downloaded the films at issue); *Digital Sin, Inc. v. John Does 1-179, No. 11 Civ. 8172 (KBF), 2012 U.S. Dist. LEXIS 78292 (S.D.N.Y. Feb. 1, 2012)* (Dkt. No. 7) ("[S]uch discovery creates a cognizable risk that the names produced could include individuals who did not in fact download the copyrighted material."); *Digital Sins, Inc. v. John Does 1-245, 2012 U.S. Dist. LEXIS 69286, 2012 WL 1744838, at *3 (S.D.N.Y. May 15, 2012)* ("This is particularly important because the nature of the alleged copyright infringement -- the downloading of an admittedly pornographic movie -- has the potential for forcing coercive settlements, due to the potential for

embarrassing the defendants, who face the possibility that plaintiff's thus-far-unsubstantiated and perhaps erroneous allegation will be made public."); *Next Phase Distribution, Inc. v. Does 1-138, No. 11 Civ. 9706 (KBF), 2012 U.S. Dist. LEXIS 27260, 2012 WL 691830, at *2 (S.D.N.Y. Mar. 1, 2012)* (noting "the highly sensitive nature and privacy issues that could be involved with being linked to a pornography film"); *SBO Pictures, Inc. v. Does 1-3036, 2011 U.S. Dist. LEXIS 137361, 2011 WL 6002620, at *3 (N.D. Cal. Nov. 30, 2011).*

This matter is a scheme, not a *bona fide* copyright infringement suit.

### B.    John Doe #28 and the Allegations

John Doe #28 received a letter from WOW  (the Internet Service Provider) advising that unless he moved to quash the enclosed subpoena, WOW would tell the Plaintiff's attorney his name, address, and telephone number, and associate it with the IP address listed for John Doe #28.  The subpoena was captioned in the Northern District of Illinois, but had a case number in a format familiar to the Eastern District of Michigan. Given the reference to Judge Goldsmith and to a Bloomfield Hills attorney, some searching was required before coming up with (presumably) the correct case.  The number used on the subpoena (2:12-cv-13309 MAG MKM) is nearly identical to this case (4:12-cv-13309 MAG MKM).

The complaint (like all Patrick Collins complaints) alleges that John Doe #28 illegally downloaded a pornographic film for which Patrick Collins, Inc. is the copyright holder.  But at ¶¶ 36-42, the complainant admits that it knows only the IP address used. It does not know whether the subscriber to WOW who was assigned the IP number actually downloaded the film.  In this case, John Doe #28 (the subscriber) **does not illegally download anything, and has never downloaded the pornographic film at issue.**   John Doe #28 is fully prepared to prove that the pornographic film is not on any device he owns or uses; rather, if Plaintiff's forensic software is accurate (which John

Doe #28 does not concede), someone else used the IP address assigned to the wireless router.

## V.     ARGUMENT

### A.     The Subpoena is Defective

At a minimum, the subpoena violates Fed.R.Civ.P.45, and should be quashed for that reason alone.  Despite the fact that the Eastern District of Michigan offers a fillable pdf version of a Rule 45 documents-only subpoena on its website (form AO88B), Plaintiff filed a subpoena purporting to be from the Northern District of Illinois.  Thus, assuming it refers to this case, the subpoena form violates Fed.R.Civ.P. 45(1)(A)(i).  The case number is also wrong.  This violates Fed.R.Civ.P. 45(1)(A)(ii).

Since the form is incorrect, the defective subpoena should be quashed and Plaintiff should either abandon the attempt or start over with the corrections made.  In the alternative, John Doe #28 seeks $500 for the additional cost of having an attorney track through the federal court system to figure out what the subpoena actually referred to.

### B.     The Subpoena Should be Quashed for Improper Joinder

Federal courts, in recent years, have struggled to achieve two purposes: 1) allowing copyright holders to legitimately protect their rights against piracy of their works, while 2) refusing to allow the federal courts to be used by shakedown artists to extort money from innocent users of the internet.  The first time courts face this dilemma is when a copyright holder asks permission to file a single suit against numerous "John Does" for allegedly working together in a "transaction or series of transactions" to pirate the same work at different times.  The plaintiffs file such a suit, then seek a Rule 45 subpoena to find out who they filed suit against.  Those targets who decline to buy their

peace then challenge the subpoenas for misjoinder under Fed.R.Civ.P. 21, or seek to quash or modify the subpoenas under F.R.Civ.P. 45 to protect them against extortion.  In each case, the Court must decide how to strike the proper balance of fairness.

Not surprisingly, there is a split of opinion both nationally and in the Eastern District of Michigan on how to strike that balance.  Each court has considered the technology as alleged, but come to different conclusions about whether the alleged activity (if true) constitutes "the same transaction, occurrence, or series of transactions or occurrences" and whether "common questions of law or fact" will therefore arise.  The courts who see a common series of transactions for purposes of Fed.R.Civ.P. 20 generally permit joinder of all such parties in the district into one suit.  *See e.g. Digital Sin, Inc. v. Does 10176,* 279 F.R.D. 229, 243-244 (S.D.N.Y. 2012).  Those who do not see a common series of transactions or common issues of law or fact for purposes of Fed.R.Civ.P. 20 generally do not permit such joinder.  *See e.g. Hard Drive Prod. v. Does 1-88,* 809 F. Supp.2d 1150 (N.D. Cal. 2011); *Donkeyball Movie, LLC v. Does 1-171,* 810 F.Supp.2d 20 (D.D.C. 2011); *First Time Videos, LLC v. Does 1-76,* 275 F.R.D. 254 (N.D.Ill. 2011).  For those who do not, the courts are additionally cognizant that requiring the filing of individual suits at the outset will make it less attractive to file suits that are mere extortion schemes.

In order to determine whether there is a common transaction or series of transactions, each court has described the BitTorrent program as alleged.  It is alleged that a single computer (the "initial seeder") downloads the copyrighted work (whether legally or illegally).  The downloader then uses BitTorrent to break it up into pieces that are tagged to mark them as pieces of the work (a "Torrent.").  These bits of the work are

more easily and quickly downloaded by other computers who have the BitTorrent program on them.  The persons using those other computers do not pay for a copy of the copyrighted work, and the "initial seeder" does not have permission to distribute the copyrighted work.  Dozens, hundreds, thousands, or millions of computers nationwide or worldwide then access the "Torrent" bits from the initial seeder and/or other computers that have already downloaded bits from the initial seeder or someone else.  In order for a single computer to have the whole film, that computer must access all the bits (usually from many different computers in many different locations). This is known as a "swarm." When the film is finally fully downloaded and put together on the computer of the accessor (a process that generally can take a few minutes to a few hours), that computer becomes a new "seeder" unless instructed not to do so.  The process then continues.

Some judges, such as Magistrate Judge Michael Randon in *Patrick Collins v. John Does* 1-21, 282 F.R.D. 161 (E.D.Mich. 2012) gives the benefit of the doubt to plaintiffs such as Patrick Collins, Inc.  This set of cases focus on allegation that, at some point in time, there had to be an "initial seeder."  Thus, the court treats every download of every bit from any computer anywhere at any time as part of a "series of transactions" that can ultimately be linked to the "initial seeder."  *Id. at* 165.   Judge Randon also notes that had the court required twenty-one separate suits, it would have to hold some 21 separate pretrials and likely would consolidate the suits for at least some purposes anyway.  This, in the court's mind, was a waste of party and judicial resources.

By contrast, judges such as Hon. George Caram Steeh in *Patrick Collins v. John Does* 1-23, 2012 U.S. Dist. LEXIS  40536 (E.D. Mich. March 26, 2012)(attached as Exhibit 7) focus on the fact that the complaint does not allege that all the defendants

downloaded the bits from each other, and that there is no allegation of concert among the defendants.  They also note that it is not alleged that each defendant downloaded from the same "swarm" at the same time, and that the same defenses might not pertain to each of the defendants.  Judge Steeh, like many,[2] has required the filing of individual suits at this time, and has quashed Rule 45 subpoenas against the ISPs of any but the first John Doe.

Judge Steeh's approach is the better one.

If this Plaintiff legitimately wishes to protect its copyright against what it believes to be illegal downloading by John Doe #28, it should simply file a separate lawsuit against John Doe #28 and allege that.  Then, it would be legitimate to use a Rule 45 subpoena to find out John Doe #28's name and address for service.  It could do the same against the other John Does as well.  When each John Doe responds, it will be readily apparent which ones admit to piracy, and which deny it and raise proper defenses.     If, after initial response, there are numerous contested cases among the 33 suits, it is entirely possible that Plaintiff would move to consolidate for pretrial activity; the Court could consider at that time the best means of reducing cost while preserving the rights of all parties to a "just, speedy, and inexpensive determination" of each action.  Fed.R.Civ.P. 1. This would not be an unknown or uncommon procedure for this court.

The contrary path of joining disparate claims under a single tenuous thread is not likely to save resources of anyone but the Plaintiff.  If the cases of John Does 1-33 are joined for all purposes, each motion will require the seeking of concurrences of up to 33 attorneys, which will increase the cost and inefficiency of counsel.  Any hearing or

---

[2] *See, e.g. Patrick Collins, Inc. v. John Does 1-15,* W.D. Mich. #1:12-cv-00618, Document #9 (Opinion and Order of August 13, 2012)(attached as Exhibit 8).  In this Opinion and Order, Judge Jonker surveys the split of opinion nationwide and in this district, and concurs with Judge Steeh rather than Magistrate Judge Randon.  Thus, he severed all but the first John Doe, permitted service of a subpoena on John Doe #1's ISP, and allowed the filing of individual lawsuits against the other John Does.

deposition will require coordinating the schedules of up to 34 attorneys – inevitably, this will extend the deadlines in order to find dates on which they are all available.   Any deposition of any individual will be interminable and expensive, as up to 34 attorneys will be asking questions.  Each John Doe is an individual, with a separate situation and likely separate lines of defense or counterclaim; but trying them together would require the Court and a jury to sort out 33 different sets of defenses and claims in a trial that (by definition) would be long, confusing, and unwieldy.   By having to accommodate the other 32 Defendants, each Defendant's legal bill will be much larger than it would have been in a single case.

Plaintiff may wish to save 32 filing fees by lumping these cases together ($11,200).  But Fed.R.Civ.P. 54(d)(1) permits Plantiff to recover a filing fee as part of the costs if it should prevail.  In a separate case against John Doe #28, the extra $350 could be recouped if Plaintiff wins.  But what if the case were allowed to proceed to trial against all 33 defendants, and Plaintiff won against some but not all Defendants?  There would be intense and serious motion practice over costs.  Among the issues would be:

> 1)   Do recoupable costs include costs attributable to litigating against Defendants who won, such as deposition costs or investigation or witness fees for facts pertaining to individual prevailing Defendants?  Why should Plaintiff be reimbursed for the losing part of its case?
>
> 2)  When costs, such as expert witnesses, pertain to the prosecution of the case against 33 defendants and Plaintiff prevails on only some of them, is the entire cost of such witnesses recoupable, or should such costs be attributed in relation to the degree to which Plaintiff won (16/33 of the cost if Plaintiff prevails against only 16 of the 33 defendants)?
>
> 3)  Is each losing defendant jointly and severally liable for the cost of litigating against all losing defendants, or is each defendant only liable for the portion of the case attributable to him or her?  On what basis?  What if Plaintiff spends more money against one losing defendant than another?

Given these complexities, it would be far simpler to treat each case individually, and use the usual cost rules on a case by case basis.

Plaintiff may protest that it will be harder for his Counsel to keep track of 33 cases and 33 sets of court schedules; but it was Plaintiff's choice to proceed against 33 defendants on the basis of nothing but IP addresses. Each of the 33 separate cases will be far simpler than a complex, multi-party case. And if consolidation for limited purposes seems more fair to the Court, it can easily make the appropriate orders upon a properly-supported motion by Plaintiff. But it is premature to make such a judgment now. In the meantime, it would be grossly inequitable to force each Defendant, whether guilty or innocent, to pay for defense of a complex case or cave in to extortion.

And when balancing the relative costs and inconveniences to plaintiff and the possible defendants, John Doe #28 respectfully points out that innocent subscribers whose IP address may have been used by others are faced with the unpalatable choice of "feeding the troll" to save the cost of defending themselves, or spending thousands of dollars on attorneys and/or forensic examiners to prove that they did not download the work. Unlike the Michigan statute providing automatic compensation to the victims of frivolous suits (MCL 600.2591), it is uncertain whether John Doe #28 can prevail on a Rule 11 sanction, 17 U.S.C. §505, or counterclaim to recoup defense costs incurred in proving innocence. By contrast, Plaintiff can easily recoup costs the event that it wins any case against John Doe #28.

On balance, the better approach is that taken by Judge Steeh: to retain the suit against John Doe #1, and to require that Plaintiff file individual actions against John Does

#2-33 (should it be serious about protecting its copyright).  Under this approach, the subpoena should be quashed against everyone but John Doe #1.

### C.      In the Alternative, the Court Should Provide for Reasonable Safeguards

In the alternative, should the Court be inclined to allow John Doe #28's identity to be discovered and decline to sever the case, John Doe #28 requests, in accordance with Fed.R.Civ.P. 45(c)(3)(A)(iv), modifications to the subpoena to prevent subjecting him to an "undue burden."

It is the pattern of these cases that disclosure of a John Doe's telephone number often leads to harassing telephone calls intended to pressure the target into paying hush money even if innocent.  To combat this, some courts have either ordered that no telephone numbers be given out, or that contact with former John Does be strictly controlled by the Court.  For example, in another case filed by Patrick Collins, Inc. by the law firm representing it in this action, the Magistrate Judges Mark A. Dinsmore of the Southern District of Indiana, in *Patrick Collins, Inc. v. John Does 1-13,* Case # 1:12-cv-00844-TWP-MJD document #19 (attached as Exhibit 9) required Plaintiff to:

> 1.      File under seal all ISP responses to the subpoenas, including all communications between the attorneys and the ISPs;

> 2.      Other than service of process or subsequent service of court papers, refrain from communicating with any putative defendant without leave of Court;

> 3.      Complete disclosure under seal to the Court of any communications between any putative defendant and the plaintiff or any of its attorneys or agents, including logs of all participants in any communication and copies of any agreements made; and

> 4.      Amend the complaint to name each putative defendant within seven days of being given the information from the putative

defendant's ISP, and immediately take steps to serve such amended complaints.

John Doe #28 respectfully requests the Court to consider adopting a similar order, especially as regards prohibition of telephone contact and preservation of John Doe #28's anonymity.

### D.      Conclusion and Prayer for Relief

For these reasons, John Doe #28 respectfully requests that:

- the subpoena be quashed as defective or, in the alternative,

- the subpoena be quashed as to John Does #2-33 and Plaintiff be required to refile against individual John Does or, in the alternative,
- 
- that the subpoena be modified to delete the requirement of disclosing telephone numbers of the John Does and to strictly limit contact with the John Does other than for service of process, as was done in *Patrick Collins, Inc. v. John Does 1-13,* Case # 1:12-cv-00844-TWP-MJD document #19.

Respectfully Submitted,

/s/ Elizabeth A. Downey_____
Elizabeth A. Downey (P37036)
Elizabeth A. Downey, P.C.
30300 Northwestern Hwy., Ste. 200
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com
Attorney for John Doe #28

October 9, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK COLLINS, INC.,

Plaintiff,                                          Case No. 4:12-cv-13309 MAG MKM
                                                    Hon. Mark A. Goldsmith
                                                    Hon. Mona K. Majzoub

v.

JOHN DOES 1-33,

Defendants.

_____/

Paul J. Nicoletti, Esq. (P44419)          Elizabeth A. Downey (P37036)
36880 Woodward Ave, Suite 100             Elizabeth A. Downey, P.C.
Bloomfield Hills, MI 48304                30300 Northwestern Hwy., Ste. 200
Tel: (248) 203-7800                       Farmington Hills, MI 48334
Fax: (248) 203-7801                       (248) 539-7407
E-Fax: (248) 928-7051                     attylizdowney@aol.com
Email: paul@nicoletti-associates.com      Attorney for John Doe #28
Attorneys for Plaintiff

**PROOF OF SERVICE**

I certify that on October 9, 2012, I served a copy of John Doe #28's:

Motion to Quash or Modify Subpoena to Wide Open West and to Sever the Case

on Counsel for Plaintiff, through ECF service at the e-mail address shown above, and on Wide Open West (the subpoena recipient) at the fax number (630) 536-3108, in accordance with the instructions sent by Wide Open West in its notification of September 18, 2012.

/s/ Elizabeth A. Downey_____
Elizabeth A. Downey (P37036)
Elizabeth A. Downey, P.C.
30300 Northwestern Hwy., Ste. 200
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com
Attorney for John Doe #28

October 9, 2012