UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK COLLINS, INC.,

                Plaintiff,                        Civil Action No. 4:12-cv-13309

          v.                                District Judge Gershwin A. Drain
                                          Magistrate Judge Laurie J. Michelson

JOHN DOES 1-33,

                Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
JOHN DOE 8, JOHN DOE 27, AND JOHN DOE 28'S
MOTIONS TO QUASH SUBPOENA, SEVER, OR DISMISS [5, 8, 10]**

In this copyright infringement case, Plaintiff Patrick Collins, Inc. ("Patrick Collins"), a company that produces adult films, asserts that John Does 1-33 ("Defendants") each used BitTorrent to illegally copy a digital version of its motion picture "Performers of the Year 2012" (the "Work"). A BitTorrent user shares digital files, often indirectly, with other BitTorrent users via the internet. Internet communication requires the use of an internet protocol address. Internet service providers ("ISPs") assign these addresses to their subscribers. Through the use of forensic software, Patrick Collins was able to capture the internet protocol addresses used by BitTorrent users to obtain a copy of the Work. Then, with leave of court, Plaintiff subpoenaed the internet service providers for the identifying information of the subscribers who were assigned the captured internet protocol addresses. (Dkt. 3 at 3.) Patrick Collins believes that there is a good possibility that the subscriber was the person who used BitTorrent to download the Work. But John Doe 8, John Doe 27, and John Doe 28 emphasize that in a household that shares an internet subscription, the subscriber may simply be the person who pays the ISP for internet access while the BitTorrent user may be another

household member, a visitor, or a neighbor.

Based in part on this possibility, and based in part on the fact that Plaintiff has not pled that the 33 John Does joined in this suit directly shared the Work with each other, John Doe 8, John Doe 27, and John Doe 28 now ask the Court to sever them from this suit for improper joinder. In particular, before the Court for a report and recommendation are "John Doe 27's Motion to Sever Defendants 2-23 and to Quash Subpoena and/or Dismiss" ("Doe 27's Motion to Sever") (Dkt. 5), "John Doe #28's Motion to Quash or Modify Subpoena to Wide Open West and to Sever the Case" ("Doe 28's Motion to Sever) (Dkt. 8), and "John Doe 8's Motion to Sever Doe Defendants 2-33 and to Quash Subpoena and/or Dismiss" ("Doe 8's Motion to Sever") (Dkt. 10).[1]

On February 20, 2013, this Court heard oral argument on Doe 28's Motion to Sever. The Court has also carefully reviewed the parties' briefs. For the reasons set forth below, this Court RECOMMENDS that Doe 8's Motion to Sever, Doe 27's Motion to Sever, and Doe 28's Motion to Sever be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

In a very similar case, this Court provided a detailed summary of the BitTorrent communication protocol. *Third Degree Films v. Does 1-36*, No. 11-CV-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012) (Michelson, M.J.); *see also Malibu Media LLC, v. John Does 1-28*, No. 12-cv-12598 (E.D. Mich. Oct. 31, 2012) (Michelson, M.J.) (report and recommendation to grant in part and deny in part motions to sever). The Court will therefore provide a condensed analysis here.

A digital movie file is distributed using the BitTorrent protocol essentially as follows. First,

---

[1]The Court proceeds by report and recommendation because Doe 18 and Doe 25 have sought dismissal in addition to other relief.

an individual with BitTorrent software obtains a copy (perhaps lawfully) of the digital movie file. This individual, known in BitTorrent parlance as the "initial seeder," uses his BitTorrent software to divide the large digital movie file (perhaps several gigabytes) into thousands of small files known as "pieces." (*See* Dkt. 1, Compl. ¶¶ 19, 20.)  The BitTorrent software also creates a unique "digital fingerprint," a 40-character alpha-numeric code, for each piece.  (Compl. ¶ 21.)  The software further generates a descriptor file, known as a ".torrent file"; this file includes information about the digital movie file, its constituent pieces, and each piece's digital fingerprint.  (*See* Compl. ¶ 23.)  The initial seeder then uploads this descriptor file (but not the large movie file) to one of various websites on the internet that host .torrent files.  (Compl. ¶¶ 27, 29.)

When a BitTorrent user is interested in downloading a movie, he can search the internet to find a .torrent file associated with the movie of interest.  (Compl. ¶¶ 27, 28.)  Once he downloads the descriptor file, his BitTorrent software uses the information in the file to locate a "swarm" of other BitTorrent users sharing pieces of the large digital movie file described by the .torrent file. (Compl. ¶¶ 24-26.)  The user joins the swarm and begins downloading pieces of the movie file from any "peer" in the swarm that has already downloaded pieces of the movie that the user has not yet downloaded (initially, any piece).  (Compl. ¶¶ 31-32.)  Critically, it is possible to download pieces from peers who themselves are still downloading other pieces of the movie (and thus do not have a full copy of the movie) because the BitTorrent software, by default, immediately offers for download any piece it has downloaded (and verified using the digital fingerprint).  (Compl. ¶¶ 30-34.)  That is, sharing is piecemeal.  Although a particular BitTorrent swarm may, over its lifetime, consist of thousands of peers, at any given moment, each peer is only directly sharing pieces with a small fraction of the swarm.  Once a BitTorrent user has downloaded all the constituent pieces of

3

the digital movie file, often receiving pieces from dozens of different peers (and, in the course of

downloading, uploading pieces to other peers), the BitTorrent software re-assembles the pieces to

a single file.  (Compl. ¶ 35.)  The digital movie file is then viewable by the BitTorrent user.

Patrick Collins' investigator, IPP, Ltd., has identified internet protocol addresses allegedly

used to download the Work via BitTorrent. (*See* Compl. ¶¶ 36-37.)   In particular, Patrick Collins

asserts that

> 38.   IPP extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the file identified by the SHA-1 hash value of DDD535C0C54E46380D01DE38C02F3CB7DE8CEECB (the "Unique Hash Number").

> 39.   The IP addresses, Unique Hash Number and hit dates contained on Exhibit A accurately reflect what is contained in the evidence logs, and show:
>
> (A) Each Defendant had copied a piece of Plaintiff's copyrighted Work identified by the Unique Hash Number; and
> (B) Therefore, each Defendant was part of the same series of transactions.

> 40.   Through each of the transactions, each of the Defendant's computers used their identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

> 41.   IPP's agent analyzed each BitTorrent "piece" distributed by each IP address listed on Exhibit A and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

(Compl. ¶¶ 38-41.)

4

## II. ANALYSIS

John Doe 8 and John Doe 27 are represented by the same counsel and make identical arguments. They first assert that these suits are inherently unfair. Relying on the possibility that an IP address may be assigned to an internet service provider subscriber's wireless router, and that people beside the subscriber could connect to that router, Doe 8 and Doe 27 assert that "the scheme of joinder may compel entirely innocent subscribers 'to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case about the alleged illegal trading of a pornographic film.'" (Dkt. 5, Doe 27's Mot. to Sever at 5 (quoting *Patrick Collins, Inc. v. Does 1-45*, Case No. 12-cv-3507, at 1-2 (S.D.N.Y. Aug. 23, 2012); Dkt. 10, Doe 8's Mot. to Sever at 5.) Doe 8 and Doe 27 also assert that Plaintiff has joined them in this suit simply to save filing fees: "By improper joinder of these Doe defendants, Plaintiff abuses the federal court system by avoiding $11,200 in Court Fees ($350 versus $350 x 34 = $11,550) for a 'fishing expedition' for subscriber information that the pornographer then uses to extract settlements from the ISP account holders." (Doe 27's Mot. to Sever at 4; Doe 8's Mot. to Sever at 4.) While these equitable considerations inform the Court's exercise of discretion to sever, Doe 8 and Doe 27's primary argument is that joinder is improper because Patrick Collins' assertions that they participated in the same BitTorrent swarm are not sufficient to satisfy Fed. R. Civ. P. 20(a)(2)(A)'s "transaction, occurrence, or series of transactions or occurrences" language. (Doe 27's Mot. to Sever at 12-19; Doe 8's Mot. to Sever at 12-19.)

Doe 28's arguments are similar. Doe 28 asserts that BitTorrent copyright suits are a "money for nothing" scheme and that IPP Limited's forensic "software does not identify the infringer[;] rather, it can only identify the IP addresses the alleged infringers used." (Doe 28's Mot. to Sever

at 2, 3.)  Also like Does 8 and 27, Doe 28 asserts that Plaintiff's swarm-theory allegations do not

satisfy Rule 20(a)(2)(A)'s joinder requirements.  (*Id.* at 5-8.)  Unlike Does 8 and 27, however, Doe

28's counsel explicitly represents that Doe 28 "never downloaded the pornographic work at issue."

(*Id.* at 4.)[2]

### A.  Plaintiff Has Pled Facts That Satisfy the Fed. R. Civ. P. 20(a)(2) Requirements

Federal Rule of Civil Procedure 20(a)(2) provides, in relevant part:

> Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in
> the alternative with respect to or arising out of the same transaction,
> occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise
> in the action.

The Court briefly addresses the latter requirement and then turns to the former.

### 1.  A Common Question of Law or Fact to All Defendants Will Arise in This Case

Neither Doe 8, 27, or 28 offers any developed argument directed to Rule 20(a)(2)(B)'s

common-question-of-law-or-fact requirement.  The Court finds that Plaintiff has adequately pled

---

[2]Doe 28 also argued that the subpoena Patrick Collins served on his (or her) ISP was not in
compliance with the Federal Rules of Civil Procedure and should therefore be quashed for that
reason.  (Dkt. 8, Doe 28's Mot. to Sever at 5.)  In particular, Doe 28 claimed that "Plaintiff filed a
subpoena purporting to be from the Northern District of Illinois" and that the listed case number
was "*2*:12-cv-13309-MAG-MKM" when the actual case number for this case is "*4*:12-cv-13309-
MAG-MKM."  (*Id.*; *see also id.* at ECF Pg ID 2.)  Plaintiff responded that the subpoena identified
the Northern District of Illinois because that was the correct court to issue the subpoena: Doe 28's
ISP is located in the Northern District of Illinois.  (Dkt. 16, Pl.'s Resp. to Doe 28's Mot. to Sever
at 4.)  Plaintiff also asserted that the single-number typo should not have caused Doe 28's counsel
significant difficulty in locating this case in the Case Management and Electronic Case Filing
system.  (*Id.* at 5.)  Doe 28 did not reply to these arguments.  (*See generally* Dkt. 17, Doe 28's Reply
to Pl.'s Resp. to Mot. to Sever.)  Then, at oral argument, Doe 28's counsel made clear that Doe 28
was forfeiting the argument.

facts satisfying Rule 20(a)(2)(B). Patrick Collins asserts the same causes of action involving the same digital file against each Defendant. (Compl. ¶¶ 11-13, 45-61.) Plaintiff has also alleged that the same investigation led to the discovery of the IP addresses allegedly associated with Defendants. (Compl. ¶¶ 36-42.) Courts have found a common question of law or fact based on similar allegations. *K-Beech, Inc. v. Does 1-31*, No. 12-CV-00088, 2012 WL 1431652, at *3 (D. Md. Apr. 24, 2012); *Raw Films, Ltd. v. John Does 1-15*, No. 11-7248, 2012 WL 1019067, at *4 (E.D. Pa. Mar. 26, 2012); *see also Patrick Collins, Inc. v. John Does 1-28*, 12-13670, 2013 WL 359759, at *7 (E.D. Mich. Jan. 29, 2013).

> ## 2. *Plaintiff Has Adequately Pled a Right to Relief Against the Defendants Arising out of the Same Series of Transactions or Occurrences*

This Court has twice opined on whether allegations that defendants shared the same digital file by participating in the same BitTorrent swarm are sufficient to satisfy Rule 20(a)(2)(A)'s "same transaction, occurrence, or series of transactions or occurrences" requirement. In *Third Degree Films v. Does 1-36*, No. 11-CV-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012) (Michelson, M.J.), when faced with allegations similar to those Patrick Collins asserts in this case, this Court concluded that the plaintiff had adequately pled claims satisfying Rule 20(a)(2)(A). *Id.* at *9-10. Then, upon revisiting the issue in a subsequent case involving allegations materially identical to those pled in this case, this Court, while noting the continuing split in authority, held steadfast to its prior analysis:

> The Court recognizes that there will continue to be disagreement on the propriety of joinder in BitTorrent cases — even within this District. *Compare Patrick Collins, Inc. v. Does 1-23*, No. 11-CV-15231, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012) (Steeh, J.) (finding that BitTorrent "swarm" theory did not justify Rule 20(a)(2) joinder); *Patrick Collins, Inc. v. Does 1-21*, No. 12-12596 (E.D. Mich. Aug. 28, 2012) (Order Severing Doe Defendants)

(Tarnow, J.) *with Patrick Collins, Inc. v. Does 1-21*, 282 F.R.D. 161 (E.D. Mich. 2012) (Randon, M.J.), *report and recommendation adopted by* No. 11-15232, 2012 WL 4498373 (E.D. Mich. Sept. 28, 2012) (Hood, J.) ("This Court agrees with the Magistrate Judge's findings that, for purposes of Rule 20(a)(2)(A), joinder of the Defendants in a single action is appropriate because the claims against all Defendants are logically related and the Defendants, as members of the same BitTorrent swarm, participated in the same series of transactions or occurrences by uploading or downloading a piece of the same seed file.") *and K-Beech Inc. v. Does 1-18*, No. 11-15226 (E.D. Mich. Apr. 17, 2012) (Order Denying Without Prej. Mot. to Sever) (Cohn, J.) (denying motion to sever for reasons stated on the record); *Third Degree Films v. Does 1-36*, No. 11-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012) (Michelson, M.J.) *and NuCorp, Inc. v. Does 1-24*, No. 11-15222 (E.D. Mich. Oct. 18, 2012) (Op. and Order Denying Motion to Dismiss/Sever and Quash) (Komives, M.J.).

As well-stated by another court,

> [T]here is a divide among district courts regarding whether joinder is proper in cases involving multiple John Doe defendants who allegedly traded the same copyrighted file while participating in the same swarm on BitTorrent. The fact that multiple courts, in well-reasoned opinions, have arrived at opposing conclusions suggests that there is no clearly correct answer to this question.

*Next Phase Distribution, Inc. v. John Does 1-27*, 83 Fed. R. Serv. 3d 301, 2012 WL 3117182, at *4 (S.D.N.Y. 2012).

In short, this Court has sided with one of two reasonable views, and Doe 18 and Doe 25 have not persuaded the Court to depart from it.

*Malibu Media LLC, v. John Does 1-28*, No. 12-cv-12598 (E.D. Mich. Oct. 31, 2012) at 7-8 (Michelson, M.J.) (report and recommendation).  Since October 2012, Judge George Caram Steeh reaffirmed his Rule 20(a)(2)(A) analysis, *Malibu Media, LLC. v. John Does 1-15*, No. 12-CV-13667, 2013 WL 136239 (E.D. Mich. Jan. 10, 2013), while Judge Thomas L. Ludington reached the opposite conclusion, *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670, 2013 WL 359759 (E.D.

Mich. Jan. 29, 2013).

Given the still-existing divide, this Court again finds no compelling reason to depart from its prior Rule 20(a)(2)(A) analysis.

Doe 28 argues for the Court to do otherwise because Patrick Collins has stated that there are multiple films at issue in this case:

> As alleged in the Complaint, Plaintiff's movies were processed by a BitTorrent Client, (a BitTorrent software program) which generated a torrent file. All 15 of the infringed works were combined together into one single torrent file.

(Dkt. 16, Pl.'s Resp. to Doe 28's Mot. to Sever at 6 n.2.)  According to Doe 28, "Plaintiff has admitted that the same torrent included fifteen of its films. If Plaintiff's main allegation of concert or joint liability or overlapping facts is the torrent's hash tag, this is insufficient to show that the thirty-three John Does accessed the same film at all. For copyright infringement purposes, this is not the same suit." (Dkt. 17, Doe 28's Reply to Pl.'s Resp. to Doe 28's Mot. to Sever at 3 (emphases removed).)

At oral argument, counsel for Patrick Collins clarified that this case involves a "site rip": all 15 films available at a particular website were copied and combined into a single digital file that was then shared via BitTorrent.  So even though multiple films are at issue, what remains is that Defendants are alleged to have shared one digital file by participation in one BitTorrent swarm. Doe 28 has not persuaded the Court that it is not these two facts — as opposed to the number of films contained within the single digital file — that are critical to the Rule 20(a)(2)(A) analysis.  In particular, it remains that by participating in the same BitTorrent swarm form for the same file, each John Doe likely aided another peer in the swarm in obtaining the digital file. These peers may have been another John Doe named in the suit, or, more likely, a peer who, through other peers in the

swarm, in turn aided another John Doe named in this lawsuit.  Accordingly, this Court believes that its prior Rule 20(a)(2)(A) analysis still applies in this case.  Patrick Collins has adequately pled facts that make plausible that its claims against the Doe defendants arise out "the same transaction, occurrence, or series of transactions or occurrences" under Rule 20(a)(2)(A).

### B.  The Court Should Not Exercise Its Discretion to Sever Defendants at this Time

"Even if the requirements of permissive joinder are met, courts maintain the discretion to sever defendants under Rules 20(b), 21, and 42(b)."  *Next Phase Distrib.*, 83 Fed. R. Serv. 3d 301, 2012 WL 3117182, at *2 (S.D.N.Y. 2012); *see also Malibu Media, LLC v. John Does 1-54*, No. 12-407, 2012 WL 3030302, at *3 (D. Colo. July 25, 2012).  Courts have considered a number of factors when deciding whether defendants joined in a BitTorrent lawsuit should be severed:

> (i) the likelihood that each John Doe defendant will assert different defenses, thereby adding factual and legal questions that are not common among all defendants, (ii) many John Doe defendants are proceeding pro se, and will therefore incur significant expense serving papers and attending depositions of all other parties to the lawsuit, (iii) the likelihood that many of the John Doe defendants are not the actual individuals who illegally downloaded the motion pictures in question, (iv) the likelihood that joinder will facilitate coercive settlements among the John Doe defendants; and (v) plaintiff's avoidance of paying filing fees by pursuing mass actions.

*See Malibu Media, LLC v. John Does 1-16*, No. 12-2078, 2012 WL 4717893, at *8 (E.D. Pa. Oct. 3, 2012).  This Court has considered these factors, and, for the reasons set forth below, recommends that the Court decline to exercise its discretion to sever Defendants *at this time*.

A likelihood of disparate, individualized defenses favors discretionary severance.  For example, one court exercised its discretion to sever where, even in the "infancy" of the suit, "it [was] clear that the Doe defendants [would] raise disparate defenses":

> For example, Doe 34 . . . . denied ever having downloaded or viewed

10

> the Film, but indicated that she provides wireless Internet for the
> tenants in the adjacent unit.  Doe 5 has asserted that the infringing IP
> address identified on the notice is not Doe 5's IP address, and argues
> that any such download was through a "'jacked or bootlegged
> connection' to the ISP network."  Doe 10 denies that he/she, or
> anyone in the household, downloaded the Film.

*See e.g., Third Degree Films v. Does 1-47*, No. 12-10761, 2012 WL 4498911, at *6 (D. Mass. Oct.

2, 2012) (internal citations omitted).

In this case, Doe 28, through counsel, asserts that he or she did

> not illegally download anything, and has never downloaded the
> pornographic film at issue.  John Doe #28 is fully prepared to prove
> that the pornographic film is not on any device he owns or uses;
> rather, if Plaintiff's forensic software is accurate (which John Doe
> #28 does not concede), someone else used the IP address assigned to
> the wireless router.

(Dkt. 8, Doe 28's Mot. to Sever at 4-5.)   Further, Doe 28's counsel provides the following

description of her efforts to prove that Doe 28 did not infringe the Work:

> [W]hen John Doe 28's Counsel attempted to contact Plaintiff's
> Counsel to ask whether there was a way to satisfy the client that John
> Doe 28 did not download the film, she was directed to the client. The
> client representative was not interested in discussing the means of
> ensuring that John Doe 28 did not have the film; she was only
> interested in an immediate cash settlement.

(Dkt. 17, Doe 28's Reply to Pl.'s Resp. to Mot. to Sever at Pg ID 4.)  At oral argument, counsel for

Doe 28 further explained that Patrick Collins' representative wanted $4,000 because Patrick Collins

believed that Doe 28 had downloaded four films.  Counsel also represented that her client was

willing to submit an affidavit declaring that he or she did not download the Work at issue.

But the question for joinder is not whether Doe 28 has a strong defense to this suit.  It is

whether the now 26 John Does in this suit will present disparate defenses, that, in turn, make joinder

inefficient.  And, on this question, it is notable that Doe 8 and Doe 27, have not raised any defense

particular to their situation.  Rather, Doe 8 and Doe 27 argue that, as a general matter, ISP subscribers identified by plaintiffs in BitTorrent copyright lawsuits may not be the individuals who committed copyright infringement.  And the other John Does in this suit have not appeared. Accordingly, at this early stage of the lawsuit, the Court is not yet in a position to determine how many and what types of defenses will be raised by the various Defendants.  While Doe 28's claim of misidentification may be a basis for a dispositive motion, it does not strongly disfavor joinder at this time.  *See Malibu Media, LLC v. John Does 1-5*, No. 12-2954, 2012 WL 3641291, at *5 (S.D.N.Y. Aug. 24, 2012) ("After [P]laintiff has effected service on defendants and defendants have responded with any relevant defenses, [the Court will then be] free to determine whether the claims against a particular defendant should be severed pursuant to Federal Rule of Civil Procedure 21 and/or dismissed.").

Logistical concerns may also favor discretionary severance.  As the court in *Hard Drive Prods., Inc. v. Does 1-188* reasoned,

> The joinder would result in numerous hurdles that would prejudice the defendants. For example, even though they may be separated by many miles and have nothing in common other than the use of BitTorrent, each defendant must serve each other with all pleadings—a significant burden when, as here, many of the defendants will be appearing pro se and may not be e-filers.  Each defendant would have the right to be at each other defendants deposition—creating a thoroughly unmanageable situation.  The courtroom proceedings would be unworkable—with each of the 188 Does having the opportunity to be present and address the court at each case management conference or other event.  Finally, each defendant's defense would, in effect, require a mini-trial.  These burdens completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice.

809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011).

12

But in this case, the number of Defendants is not obviously too numerous: 26 after the voluntary dismissal of John Does 1 to 7.  *Cf. New Sensations, Inc. v. Does 1-426*, No. 12-3800, 2012 WL 4675281, at \*8 (N.D. Cal. Oct. 1, 2012) ("Here, given that there are over four hundred Doe Defendants joined in one action based on alleged infringing activity over a two month period, this Court finds that there would be significant manageability issues.").  There may be additional dismissals and the Court does not yet know how many Defendants will ultimately appear after service.  *See Patrick Collins, Inc. v. John Does 1-79*, No. 12-10532, 2012 WL 3648410, at \*8 (D. Mass. Aug. 22, 2012) (declining to address defendants' severance argument, noting that "[t]he analysis depends to some extent upon factors (such as the defenses asserted by the eventual defendants and the number of defendants identified and appearing) not yet known.").  In fact, Patrick Collins asserts that,

> From Plaintiff's experience, approximately 10% of all Doe Defendants result in a discovery failure when the Internet Service Provider ("ISP") is unable to correlate an IP address with a person. Second, Plaintiff will often not pursue its claims against many Doe Defendants.  As an example, once receiving discovery Plaintiff will learn that some Doe Defendants are active duty military, elderly, a coffee shop with open wireless, or have some other circumstance that would prevent Plaintiff from pursuing its claims.  This will inevitably reduce the number of Defendants joined together.

(Dkt. 16, Pl.'s Resp. to Doe 28's Mot. to Sever at 16.)

It is also notable that Defendants in this case may ultimately be represented by a handful of counsel who will appear for hearings, depositions, and conferences on Defendants' behalf.  Further still, the other Defendants in this case, like Does 8, 27, and 28, may ultimately be e-filers, thereby simplifying service of motions and pleadings.  Simply stated, the Court believes the best course is to continue to assess whether the case has become logistically unwieldy as it progresses.  *See W.*

13

*Coast Prods., Inc. v. Does 1-351*, No. 4:12-CV-00504, 2012 WL 2577551, at *3 (S.D. Tex. July 3,

2012) ("If Plaintiff proceeds in this action or elsewhere against specific named Defendants, those

Defendants may raise applicable joinder issues at that time. It may well be unwieldy to have one

case with hundreds of defendants with differing explanations for their connections to the IP

addresses identified by Plaintiff, but the Court does not reach that issue now.").

Does 8, 27, and 28 emphasize the possibility of Patrick Collins engaging in abusive

settlement tactics. (Doe 8's Mot. to Sever at 1-10; Doe 27's Mot. to Sever at 1-10; Doe 28's Mot.

to Sever at 1-4.) Another court aptly summarized the potential for such abuse:

> Even though [Plaintiff] Next Phase believes it has correctly identified
> the alleged infringers by tracking their IP addresses, an IP address
> does not necessarily correlate to a particular alleged infringer because
> several people may access the same IP address:
>
>> [T]he assumption that the person who pays for
>> Internet access at a given location is the same
>> individual who allegedly downloaded a single
>> sexually explicit film is tenuous, and one that has
>> grown more so over time. An IP address provides
>> only the location at which one of any number of
>> computer devices may be deployed, much like a
>> telephone number can be used for any number of
>> telephones . . . . Thus, it is no more likely that the
>> subscriber to an IP address carried out a particular
>> computer function—here the purported illegal
>> downloading of a single pornographic film—than to
>> say an individual who pays the telephone bill made a
>> specific telephone call.
>
> [*In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11
> Civ. 3995, 12 Civ. 1147, 12 Civ. 1150, 12 Civ. 1154, 2012 WL
> 1570765, at *3 (E.D.N.Y. May 1, 2012)]. Aside from the obvious
> concerns associated with catching so many potentially uninvolved
> individuals in the wide net of this litigation, there is also the prospect
> that, even if a John Doe did not download the Motion Picture, he may
> feel compelled to settle the lawsuit confidentially in order to avoid
> the embarrassment of being named as a defendant in a case about the

14

alleged illegal trading of a pornographic film.

*Next Phase Distrib., Inc. v. John Does 1-27*, 83 Fed. R. Serv. 3d 301, 2012 WL 3117182 at *5 (S.D.N.Y. 2012); *see also Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material."); *Malibu Media, LLC v. John Does 1-54*, No. 12-CV-1407, 2012 WL 3030302, at *5 (D. Colo. July 25, 2012) ("Courts across the country have observed that Plaintiff (and other companies involved in this type of litigation) do not seem interested in actually litigating their copyright claims. Rather, they appear to be using the federal courts only to obtain identifying information for the ISP owners and then attempting to negotiate a quick settlement.").

This Court is troubled by and has considered the possibility of Plaintiff "strong-arming" Defendants — including innocent ISP subscribers who did not download the Work — into settlements. But Does 8 and 27 offer no case-specific allegations of coercion. Absent such allegations, discretionary severance on that basis is not warranted:

> The most common discretionary consideration invoked as a reason to prohibit joinder has been the potential for coercion. That is, there is a fear that regardless of a defendant's actual culpability, "he may feel compelled to settle the lawsuit confidentially in order to avoid the embarrassment of being named as a defendant in a case about the alleged illegal trading of a pornographic film." [*Next Phase Distrib., Inc. v. John Does 1-27*, 83 Fed. R. Serv. 3d 301, 2012 WL 3117182 at *5 (S.D.N.Y. 2012)]. Stories that have emerged concerning coercive litigation tactics employed by plaintiffs in several cases have only heightened these fears. . . .
>
> While we are certainly attuned to these concerns, we believe they are mitigated in this action for several reasons. First, none of the instances of improper litigation tactics that have been brought to our attention involve plaintiff [Malibu Media] or plaintiff's counsel. We are reluctant to prevent plaintiff from proceeding with its case based

only on a "guilt-by-association" rationale. *Third Degree Films v. Does 1-36*, No. 11 Civ. 15200, 2012 WL 2522151, at *11 (E.D. Mich. May 29, 2012).

*Malibu Media, LLC v. John Does 1-5*, No. 12-2954, 2012 WL 3641291, at *4 (S.D.N.Y. Aug. 24, 2012).

Doe 28's coercion argument is more persuasive. Doe 28 points out that based on his (or her) counsel's research, Patrick Collins has filed over 200 BitTorrent copyright lawsuits and has not litigated any on the merits. (Dkt. 8, Doe 28's Mot. to Sever at 1-2; Dkt. 17, Doe 28's Reply to Pl.'s Resp. to Mot. to Sever at 1.) Still, the fact that many of Patrick Collins' suits ended in dismissals does not necessarily mean that Patrick Collins engaged in coercive tactics. A significant majority of the settlements may have been good-faith negotiations with those who in fact committed copyright infringement.

Moreover, it is not clear that Patrick Collins' present counsel has ever engaged in coercive settlement tactics. In fact, counsel asserts that

> Plaintiff believes firmly in adjudicating its cases on the merits and is not afraid to do so, and will proceed with litigation against many defendants. That being said, Plaintiff is also conscious of its Rule 11 duty and takes care to not name and serve individuals that do provide exculpatory evidence, such as a business that provides wireless to the public, or an active duty military defendant.

(Pl.'s Resp. to Doe 28's Mot. to Sever at 2.) In another suit, counsel also informed the Court that his practice — which includes BitTorrent litigation in this District and two others — does not involve sending settlement demand letters to defendants.

Most troubling in this case, however, is the representation by counsel for Doe 28 that when she attempted to contact Plaintiff's local counsel to explain that Doe 28 was not a downloader of the Work, she was directed to a client representative who immediately demanded a monetary settlement.

16

At oral argument in this case, Patrick Collins' local counsel indicated that he did not recall this particular situation.  He further provided that defendants who claim misidentification, like Doe 28, may complete an "Exculpatory Evidence Request" form and thereby provide Patrick Collins with evidence of misidentification (e.g., an unsecured router within range of neighboring houses).  Patrick Collins agreed to  provide this form to Doe 28 to complete; upon completion it may be that Patrick Collins will dismiss Doe 28 from this suit.

Further, as other courts have noted, Doe 8, Doe 27, and Doe 28 have some protections against coercive settlements.  For one, they are represented by counsel.  *See Patrick Collins, Inc. v. John Does 1-54*, No. CV-11-1602, 2012 WL 911432, at *4 (D. Ariz. Mar. 19, 2012) ("Other courts have issued protective orders in BitTorrent-related copyright infringement suits in order to prevent improper tactics such as personal telephone calls from the Plaintiff to pro se Defendants demanding settlement. . . .  John Doe 6 is represented by counsel, and faces a lower probability of such treatment.").  For another, if Defendants are able to demonstrate that someone else used their IP address to download the Work via BitTorrent, they may be able to collect some of their litigation expenses from Plaintiff:

> In the event Plaintiff's allegations cannot be sustained, the five John Does will have adequate remedies to recover most, if not all, of these litigation expenses and/or damages from Plaintiff, such as a Rule 54 motion for costs, a lawsuit for abuse of civil process, a Rule 11 motion for sanctions, and a motion to recover excessive costs under 28 USC § 1927.  More fundamentally, as mentioned above, because this is a copyright case, a successful defense will likely result in an award of attorney's fees to any John Doe who prevails under 17 U.S.C. § 505.

*Malibu Media, LLC v. John Does 1-16*, No. 12-2078, 2012 WL 4717893, at *10 (E.D. Pa. Oct. 3, 2012); *see also id.* at *9 ("Although the Court cannot prevent the parties from settling these claims,

the Court assumes that Plaintiff will welcome this opportunity to prove its claims promptly pursuant

to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the copyright laws,

which may, if Plaintiff is successful, lead to an injunction enjoining the practices about which

Plaintiff complains.  If Plaintiff decides instead to continue to 'pick off' individual John Does, for

confidential settlements, the Court may draw an inference that Plaintiff is not serious about proving

its claims, or is unable to do so.").  Additionally, as detailed below, the Court will recommend that

Doe 8, Doe 27, and Doe 28 be allowed to proceed anonymously in this litigation (at least initially).

*See Malibu Media, LLC v. John Does 1-5*, No. 12-2954, 2012 WL 3641291, at *4 (S.D.N.Y. Aug.

24, 2012) ("[T]his Court and others have permitted defendants to litigate the BitTorrent cases

anonymously upon a proper request to do so.  The ability of a John Doe defendant to ensure that his

name will not be publicly associated with the case removes much, if not all, of the leverage that a

plaintiff would possess to unduly coerce him into settlement.").  With all of these safeguards in

place, and given Patrick Collins' counsel's representations, the Court believes that, on this

preliminary record at least, the possibility of coercive settlement tactics is minimal.

Related to the coercion argument, Does 8 and 27 also assert that this Court should exercise

its discretion to sever Defendants because the Work at issue in this case may not even be entitled

to copyright protection.  (*See* Dkt. 5, Doe 27's Mot. to Sever at 6; Dkt. 10, Doe 8's Mot. to Sever

at 6.)  But this argument appears to be based on the analysis of one court that explained:

> [I]f [a] Motion Picture is considered obscene, it may not be eligible
> for copyright protection.  *See Liberty Media Holdings, LLC v. Swarm
> Sharing Hash File and Does 1-38*, 821 F. Supp. 2d 444, 447 n. 2 (D.
> Mass. 2011) (noting it is "unsettled in many circuits, whether
> pornography is in fact entitled to protection against copyright
> infringement").  In *Mitchell Bros. Film Grp. v. Cinema Adult
> Theater*, 604 F.2d 852 (5th Cir. 1979), a court stated for the first time
> that obscene works may be eligible for copyright protection: "there

18

is good reason not to read an implied exception for obscenity into the copyright statutes." *Id.* at 854. However, since the *Mitchell Bros.* decision, judges across the country and within this district have reached different conclusions on this issue. *Compare Devil Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174, 177 (S.D.N.Y. 1998) ("Once a court has determined that copyrighted material is obscene, there seems no reason to require it to expend its resources on behalf of a plaintiff who it could as readily be trying for a violation of the federal criminal law.") *with Nova Prods., Inc. v. Kisma Video, Inc.*, Nos. 02 Civ. 3850, 02 Civ. 6277, 03 Civ. 3379, 2004 WL 2754685, at *3 (S.D.N.Y. Dec. 1, 2004) (agreeing with *Mitchell Brothers* decision and stating that obscenity does not provide defense to copyright infringement of pornography). Accordingly, the Court recognizes that joining 27 defendants, a substantial number of whom may have no liability in this case, in a copyright infringement case when the copyright itself might be deemed invalid, could prove to be a costly and futile exercise for *Next Phase* and the Court, and a damaging an[d] unnecessary ordeal for the John Does.

*Next Phase Distrib., Inc. v. John Does 1-27*, 83 Fed. R. Serv. 3d 301, 2012 WL 3117182 at *6 (S.D.N.Y. 2012). As another court noted, however, "other circuits that have addressed the issue have either determined or endorsed the view that the copyright laws are not content-based, and thus pornography is indeed eligible for copyright protection." *Malibu Media, LLC v. John Does 1-16*, No. 12-2078, 2012 WL 4717893, at *8 n.8 (E.D. Pa. Oct. 3, 2012). Further, it is not clear which way the Does' argument cuts: if Doe 8 and Doe 27 intend to assert that the Work is not entitled to copyright protection, that defense would presumably be available to all Defendants, which, in turn, favors joinder.

Finally, the Court acknowledges the concerns about federal courts becoming "cogs in a plaintiff's copyright-enforcement business model." *Malibu Media, LLC v. Doe 1-9*, No. 2:12-cv-3623, 2012 U.S. Dist. LEXIS 89286, at *9 (C.D. Cal. June 27, 2012). But there are also contrary considerations such as the inefficiencies of separate lawsuits. *See Malibu Media, LLC v. John Does 1-14*, No. 1:12-CV-263, 2012 WL 6019259, at *8 (N.D. Ind. Dec. 3, 2012) ("Although

19

the judicial system may lose revenue from the filing fees by not severing Defendants into separate cases, the efficiency and facilitation of discovery that joinder brings, at least at this stage, outweigh this concern."); *AF Holdings LLC v. Does 1-1,058*, 286 F.R.D. 39, 55 (D.D.C. 2012) ("[J]oinder at this stage in the proceedings is the single, most efficient mechanism available for the plaintiff to obtain information to identify those allegedly illegally downloading and distributing its movie. Severing the Doe defendants would essentially require the plaintiff to file 1,058 separate cases, pay separate filing fees, and obtain 1,058 separate subpoenas for each of the Listed IP Addresses. This burden for the plaintiff—not to mention the judicial system—would significantly frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in the alleged infringing activity.").

After evaluating a number of factors informing the propriety of discretionary severance, the Court believes joinder is presently proper and Defendants should at least be served with the Complaint and be required to make their (anonymous) appearance. As the Court has tried to make clear, however, it does not intend to foreclose the possibility of severance in the future. As the case progresses, additional facts may come to light that justify discretionary severance.

### C. Motion for Protective Order

As alternative relief, Doe 8 and Doe 27 seek a protective order pursuant to Fed. R. Civ. P. 26(c)(1). (*See* Doe 8's Mot. to Sever at 19-20; Doe 27's Mot. to Sever at 19-20.) Doe 28, by a different procedural means, seeks similar alternative relief. Doe 28 asks the Court to modify the subpoena such that the ISPs are not required to produce Doe 28's telephone number: "It is the pattern of these cases that disclosure of a John Doe's telephone number often leads to harassing telephone calls intended to pressure the target into paying hush money even if innocent." (Doe 28's

Mot. to Sever at 11.)

In a prior case, this Court found that a protective order was not appropriate. *Third Degree Films v. Does 1-36*, No. 11-CV-15200, 2012 WL 2522151, at *12 (E.D. Mich. May 29, 2012) (Michelson, M.J.). Although the Court maintains the view that a protective order is not necessary in these suits, the Court is troubled by the possibility that a significant portion of the subscribers identified by ISPs may not actually be the BitTorrent users who downloaded the Work. *See Digital Sin, Inc. v. Does 1-27*, No. 12-3873, 2012 WL 2036035, at *4 (S.D.N.Y. June 6, 2012) ("In another *Digital Sin* case brought by the same counsel as in this case, counsel conceded that there was a high risk of false positive identifications (that is, as many as '30% of the names turned over by the ISPs may not be those of individuals who actually downloaded or shared copyrighted material') and that there were 'horror stories' of harassing and abusive litigation techniques by some law firms." (citing *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012))). Moreover, Patrick Collins does not object to the issuance of a protective order: "Plaintiff does not object to a protective order that would enable Defendant to proceed anonymously and prevent Plaintiff from publically naming Defendant until after discovery is conducted." (Pl.'s Resp. to Doe 27's Mot. to Sever at 4.) Accordingly, the Court finds the following reasoning persuasive in this case:

> With respect to the John Does' expectation of privacy, the Court finds that any detriment to this interest is mitigated by granting their request to proceed anonymously. It bears emphasis that the Court is proceeding in an abundance of caution. The record suggests that the motion pictures at issue are pornographic in nature. The John Does might thus be subject to public embarrassment upon the disclosure of the fact that their IP addresses were used to download pornographic material. As discussed above, although the disclosure of subscriber information may not reveal the actual infringers in these cases, it may nevertheless allow Plaintiff to identify the actual infringers. Further, pornography is rampant on the internet for free, and no crime has been committed as long as the pornography is exclusively adult

pornography. There is no suggestion of any child pornography in these cases. Thus, the incidence of adult pornography being downloaded onto someone's computer is not earth shattering in this day and age, although it can be obscene and embarrassing to many people.

*Malibu Media, LLC v. John Does 1-16*, No. 12-2078, 2012 WL 4717893, at *7 (E.D. Pa. Oct. 3, 2012); *see also Sunlust Pictures, LLC v. Does 1-75*, 12 C 1546, 2012 WL 3717768, at *5 (N.D. Ill. Aug. 27, 2012); *Digital Sin, Inc. v. Does 1-27*, No. 12-3873, 2012 WL 2036035, at *4 (S.D.N.Y. June 6, 2012). The Court emphasizes that it recommends a protective order out of an "abundance of caution," *Malibu Media, LLC v. John Does 1-16*, 2012 WL 4717893, at *7 — not because the nature of the case necessarily demands one.

## III. CONCLUSION AND RECOMMENDATION

The Court RECOMMENDS that John Doe 8 and John Doe 27's "Motion[s] to Sever Doe Defendants 2-23 and to Quash Subpoena And/or Dismiss" (Dkts. 5, 10) and John Doe 28's "Motion to Quash or Modify Subpoena to Wide Open West and to Sever the Case" (Dkt. 8) be GRANTED IN PART AND DENIED IN PART.

The motions should be DENIED WITHOUT PREJUDICE to the extent they seek to sever or dismiss this action. The motions should also be DENIED to the extent that they seek to quash the subpoenas served on Doe 8's ISP, Doe 27's ISP, and Doe 28's ISP.

Doe 28's motion should be GRANTED insofar that it seeks to modify the subpoena served on Wide Open West Internet, Cable & Phone. In particular, the subpoena (*see* Doe 28's Mot. to Sever, Ex. 1) should be modified such that Wide Open West is not required to produce documents identifying the telephone number of John Doe 28.

Further, Doe 8's, Doe 27's, and Doe 28's motions should be GRANTED insofar that they

22

seek a protective order.  In particular, the Court RECOMMENDS the following ORDER: Plaintiff

is to refrain from naming any Defendant in any pleading or motion filed with the Court until further

order from the Court in response to a proper motion by Plaintiff.  Plaintiff should exercise its

discretion in filing such a motion; a proper basis includes a prima facie showing that the person to

be publically named is the person who downloaded the Work via BitTorrent (as opposed to a mere

subscriber of the internet-access used by the person who downloaded the Work).  Plaintiff shall

further refrain from using the identifying information it obtains from the subpoenaed ISPs for

purposes other than litigating this suit.

## IV.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation

within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*,

474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States*

*v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections,

but failing to raise others, will not preserve all the objections a party may have to this Report and

Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal

quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case

Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies,

through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon

this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an

objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be

filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).


s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated:  February 27, 2013


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 27, 2013.


s/Jane Johnson
Deputy Clerk


24